# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| Bank of New York Mellon | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. S15L-12-053 |
| | ) | |
| | ) | |
| James A. Hegedus and | ) | |
| Virginia E. Hegedus | ) | |
| | ) | |
| Defendants. | ) | |

**Submitted:** September 28, 2017
**Decided:** December 18, 2017

## DECISION AFTER TRIAL

## OPINION

Daniel T. Conway, Esq. ORLANS PC, 512 East Market Street, Georgetown, Delaware 19947, *Attorney for the Plaintiff.*

James A. Hegedus and Virginia E. Hegedus, PO Box 2325, Staunton, Virginia 24402, *pro se,* Defendants.

**BRADY J.**

## INTRODUCTION AND PROCEDURAL HISTORY

Before the Court is a mortgage foreclosure action, brought by the Bank of New York Mellon ("Plaintiff") against James A. Hegedus and Virginia E. Hegedus, ("Defendants"). Defendants, residents of Virginia, purchased a home in Delaware, subject to a mortgage.[1] This matter was initially filed in December 2015. Numerous issues were raised by Defendants prior to trial, including whether the Plaintiff was the real party in interest and had standing, whether there was a default, and if so, which party defaulted, discovery disputes and a Motion to Quiet Title. There was a brief period when the matter was placed on the dormant docket, but then removed at Defendants' request. The matter was heard in a nonjury trial before this Judge, beginning March 9, 2017. After hearing argument and some testimony, the Court recessed to allow the parties to determine if some mutual, amicable resolution could be reached. Those efforts were unsuccessful, and the Court reconvened on August 31, 2017 and concluded testimony. The Court permitted post-trial submissions by both parties. The final submission was received on September 28, 2017. This is the Court's decision.

## PARTIES' CONTENTIONS

The Defendants contend they did not default on their obligation under the mortgage.[2] They claim they had an agreement with the County to pay their taxes in several installments and, therefore, were not delinquent in paying their taxes.[3] Defendants challenge the authority of the Plaintiff to bring this action.[4] They assert that

---

[1] The original lender was actually First Horizon Home Loans, but the Plaintiff acquired the mortgage by assignment.

[2] Def's Mot. to Dismiss, at 2 (Dec. 21, 2016).

[3] Def's Resp. to Pl's Brief, at 3 (Sept. 14, 2017) (hereinafter, "Def's Resp.").

[4] Supp. Ans. To Pl's Complaint, at 12 (Sept. 16, 2016) (hereinafter, "Supp. Ans."). Defendants made the assertion that the Plaintiff does not have standing to bring this action in multiple filings and during the bench trial on Mar. 9, 2017.

Plaintiff never paid any monies on behalf of Defendants, and that no escrow was established.[5] They contend the mortgage attached to the Complaint is a "pretender mortgage" and that there have been violations of their due process rights and the Fair Debt Collections Practices Act.[6] They further claim they never received the demand letter, and that the person who signed the Affidavit saying it was mailed worked for Nationstar, not the "alleged Plaintiff," and therefore the letter did not meet the legal requirements, and that there is no record that they did receive the demand letter.[7] They also allege they were not informed of the acceleration of the loan.[8] Finally, Defendants claim they are entitled to an Order quieting title in this matter and discharge of their remaining debt because their loan was sold, not recorded, and therefore the mortgage is "nonexistent" and "unenforceable."[9]

Plaintiff contends that Plaintiff is the proper party in interest and has standing to bring this action. Plaintiff asserts that Defendants did not pay their property taxes timely and that the original loan documents permit the establishment of an escrow account if that circumstance occurred.[10] Plaintiff contends the account was placed in default when the Defendants disregarded the obligation to pay the escrow amounts, and this action is properly brought.[11]

---

[5] Def's Resp., at 7.
[6] Def's Ans. And Counterclaim, at 7, 9 (Feb. 16, 2016).
[7] Supp. Ans., at 5.
[8] Defendants also brought a Counterclaim, but that was dismissed by the Court on May 20, 2016 after a hearing.
[9] Defs' Mot. to Dismiss (Dec. 21, 2016).
[10] Pl's Brief, at 2 (Sept. 14, 2017).
[11] *Id.* at 3, 4.

## FINDINGS OF FACT

The Court has reviewed the entirety of the record, including notes taken at trial and all submissions by the parties, pre- and post-trial. The Court makes the following findings of fact.

The original mortgage at issue in this matter was executed on June 14, 2006 between Defendants and First Horizon Home Loan Corporation as lender/mortgagee, with MERS listed as nominee for the lender. Included in the terms of the mortgage, the lender agreed to waive any requirement that Defendants place monies in escrow for property taxes.[12] On August 15, 2011, Nationstar sent a welcome letter to Defendants notifying them that Nationstar would be serving the loan for MetLife, a sub-server for First Horizon Home Loans Corporation. On September 13, 2013, the mortgage was assigned from MERS to Bank of New York Mellon ("Plaintiff"). The assignment retained Nationstar as the mortgage servicer.

On March 8, 2013, Nationstar sent a letter titled "URGENT" to Defendants advising they had conducted an examination of tax records, and found that a portion of the Sussex County taxes, which had been due on September 30, 2012, in the amount of $140.17, had not been paid.[13] The letter further advised, "Failure to pay your taxes prior to their delinquency date constitutes a default under the terms of your mortgage or deed of trust and places your property in jeopardy. As such, pursuant to the Waiver of Lender's Right to Escrow for Taxes and Insurance you executed in connection with your loan, Nationstar Mortgage may require that you maintain an escrow/impound account for

---

[12] Pl's Trial Ex. 1, Tab 1.
[13] Pl's Trial Ex. 1, Tab 5.

the payment of future taxes and insurance."[14] On April 11, 2013, Nationstar notified Defendants again of the delinquency and asked, if the taxes had been paid, to send proof of payment. The same correspondence put Defendants on notice that "In the event you are unable to provide this office with proof of payment within 15 days, Nationstar Mortgage may elect, without further notice, to advance payment of delinquent taxes, assessment charges and penalties and interest as provided in your loan documents. Furthermore, Nationstar Mortgage will establish an irrevocable escrow account for you, to prevent future tax defaults and your monthly payment amount will be adjusted accordingly."[15]

On July 2, 2013, unaware that Defendants had sent a check to Sussex County for the taxes on July 1, 2013, Nationstar sent a check to Sussex County in the amount of the delinquent taxes. The County credited Nationstar's payment first, and the payment sent by Defendants was returned to them. On July 31, 2013, Defendants sent a check in the amount of $140.17 to Nationstar in reimbursement. Nationstar placed the amount in what they termed a "suspends" account.

In subsequent months, Defendants sent payments to Nationstar in the amount of the original mortgage payment without escrow included. Nationstar, however, had revoked the waiver of escrow, and subsequent statements to Defendants, beginning July 16, 2013, reflected a negative escrow balance.[16] On the payment dated August 1, 2013, Defendants wrote on the back of the check, "no escrow account and no escrow due."[17] On August 30, 2013, apparently in response to the note on the back of the August

---

[14] *Id.*
[15] Pl's Trial Ex. 1, Tab 6.
[16] Pl's Trial Ex. 1, Tab 9.
[17] Pl's Trial Ex. 1, Tab 12, at 2.

5

payment, Nationstar sent a letter to Defendants stating that company was not going to remove the requirement there be an escrow account because the taxes had been delinquent.[18] On September 30, 2013, the Sussex County taxes were again due. On September 26, 2013, Defendants paid the County $967.14, the balance due after crediting the $140.17 they had previously paid to Nationstar. On September 30, 2013, Nationstar paid the same amount to the County. Sussex County refunded the money to Nationstar on October 24, 2013. Nationstar credited that amount to Defendants' escrow account.

Finally, in December 2013, because each monthly payment had been submitted in an amount less than that which was billed, Nationstar considered the December payment a "missed payment." Defendants continued to make payment each month to Nationstar in the amount of the original, pre-escrow mortgage payment, but were considered one month in arrears each payment, because Nationstar did not credit the December 2013 payment. By July 2014, Defendants were two months behind in mortgage payments due to the accruing shortage, and on July 15, 2014, Nationstar sent Defendants a Notice of Intent to foreclose, if they did not bring the account current with a payment of $3,500.25, due by August 19, 2014.[19] Defendants did not bring the account current and, beginning in August of 2014, Nationstar began returning the checks Defendants sent, again in the amount of the original, pre-escrow payment. A total of 18 checks were returned to Defendants by Nationstar. Beginning in December 2015, when this action was filed, Defendants stopped sending monthly payments to Nationstar.

---

[18] Def's Trial Ex. 4.
[19] Pl's Trial Ex. 1, Tab 35.

## APPLICABLE LAW

The writ of *scire facias* sur mortgage is founded upon a record, the record being the mortgage.[20] The defenses available are limited to satisfaction, payment, or avoidance of the deed.[21]

## ANALYSIS AND CONCLUSIONS

The Court finds that the Plaintiff is the proper party to bring this action. While Defendants continue to challenge the Plaintiff's authority, the Court has ruled previously that the Plaintiff is the proper party, and, after another review of the entire record, reiterates that finding here.

The Court further finds that Defendants breached their obligations, undertaken at the time of the execution of the lending documents, to pay their taxes timely. The language of the original lending documents clearly permits the lender to establish an escrow account and Plaintiff properly notified Defendants they would do so.[22] The Court finds the requirements that would allow Plaintiff to establish an escrow account were met, and they acted within their authority to do so.

Further, the Court finds Defendants had ample notice of the fact that the lender considered the taxes to be in delinquent status, by means of the letters in both March and April of 2013 and that the lender made it clear that an escrow account would be established if Defendants failed to pay the taxes. Despite those two notices, Defendants

---

[20] *Gordy v. Preform Bldg. Components, Inc.* 310 A.2d 893, at 895 (Del. Super. Ct. Aug. 13, 1973) (citing 2 Woolley On Delaware Practice 918, s 1358).

[21] *Id.*

[22] Defs' Ex. 6, Escrow Waiver (Jun. 14, 2006) (It states, in pertinent parts:
The Borrower(s) and FIRST HORIZON HOME LOAN CORPORATION have agreed to waive the requirement to institute an escrow account toward future payment... It is further understood that no waiver by FIRST HORIZON HOME LOAN CORPORATION of non-compliance by Borrower(s) with the requirement for timely and complete payment of the Escrow Items shall constitute more than a waiver of that single failure...

7

did not pay the balance due on the taxes until August 2013, a full 5 months after they had first been notified by the Plaintiff of the potential consequences of failing to do so.[23]

Once the Defendants refused to accept the fact that the escrow had been established, they acted in contravention of their responsibilities as well as their own best interests. The result of their determination to avoid the inclusion of an escrow payment on their mortgage is that their home is now in foreclosure.

Defendants contend they did not receive due process in the course of this foreclosure procedure, and that other procedural defects, including violations of federal laws, prejudiced them and prevented a fair resolution of the matter. The Court finds otherwise. They clearly had notice of the fact that the lender knew the taxes were delinquent, that the lender intended to pay the taxes, if they did not, and to revoke the waiver of escrow requirements. Defendants actually referenced the escrow requirements on the backs of the checks they sent in payment of the mortgage. Further, they received the Demand Letter advising them to bring the account current, but declined to do so. They claim they did not receive documents that were mailed to their address in Virginia, as well as the property address, but they acted in a manner consistent with full awareness of the position taken by the Plaintiff, and the action Plaintiff could potentially take. Further, they knew about this action being filed because they complained about the language used to describe the person served at the property.[24] Defendants were offered an opportunity to bring the account current, and subsequently, to mediate the matter, which they declined, and to re-negotiate the loan, which they also declined. Their

---

[23] In the course of her testimony, Mrs. Hegedus, in reviewing the paperwork, commented that she did not know why she didn't pay the balance, she was still working at that time.

[24] The person who was served at the property was termed a "cohabitant", a term to which Defendants took issue because they felt it had inappropriate sexual overtones.

position that the matter should be dismissed and their account considered paid in full was not justified in the law nor supported by the evidence.

Defendants do claim one defense relevant to an action in rem – they say they paid in full the amounts due and owing. The Court finds they did not. The escrow account was established pursuant to the agreement the Defendants made at the time the original loan documents were executed. There was a basis for the account to be created, and the Defendants were obligated to pay according to the newly calculated monthly payment, which included the escrow amounts. Failure to do so breached the terms of the mortgage and placed their property at risk of foreclosure, which Plaintiff pursued.

## CONCLUSION

The Court finds for the Plaintiff. Judgment is hereby entered for Plaintiff. Counsel is to submit an Order with current amounts owed.

**IT IS SO ORDERED.**

M. Jane Brady
Superior Court Judge